# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00564-CR

**Daniel Fernandez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-05-204068, HONORABLE JON N. WISSER, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury convicted appellant Daniel Fernandez of aggravated assault. *See* Tex. Penal Code Ann. § 22.02 (West Supp. 2007). He was sentenced to twelve years in prison and assessed a $1,000 fine. In two points of error, Fernandez contends that the trial court erred by failing to instruct the jury on all counts set out in the indictment and by admitting certain exhibits into evidence. Finding no error, we affirm the trial court's judgment.

*Background*

On August 7, 2005, Martha Dominguez was at a night club with a male friend. While they were dancing, one of Fernandez's friends approached Dominguez's friend, and a fight ensued. Both men were arrested. Fernandez and a group of Fernandez's remaining friends left the night club in one vehicle at the same time that Dominguez and her friends left the club in another vehicle. The vehicle in which Fernandez was riding alternately followed and passed the vehicle in which

Dominguez was riding. Fernandez's vehicle eventually pulled up beside Dominguez's vehicle, and shots were fired. One of the bullets entered Dominguez's vehicle through the windshield and hit Dominguez in the face. After undergoing surgery, Dominguez lost one eye and was left with limited vision in the other.

Police interviewed witnesses and were able to get a license plate number for Fernandez's vehicle. With this information, they found and stopped the vehicle. When police questioned the owner of the vehicle, Martin Arce, he identified Fernandez as having been involved in the incident. Police then interviewed Fernandez. Although Fernandez's story was inconsistent, he ultimately admitted to holding the gun and to firing the gun at Dominguez's vehicle.

In the indictment, Fernandez was charged with aggravated assault and with deadly conduct. According to the indictment:

> Daniel Alexander Fernandez . . . did then and there intentionally, knowingly or recklessly cause bodily injury to Martha Dominguez by discharging a firearm and the said Daniel Fernandez did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault,
>
> . . . Daniel Fernandez did then and there intentionally, knowingly or recklessly cause serious bodily injury to Martha Dominguez by discharging a firearm in the direction of a motor vehicle occupied by Martha Dominguez, and the said Daniel Fernandez did then and there use or exhibit a deadly weapon, to-wit: a firearm, during the commission of said assault,
>
> . . . Daniel Fernandez did then and there recklessly engage in conduct that placed Martha Dominguez in imminent danger of serious bodily injury by discharging a firearm in the direction of the vehicle occupied by Martha Dominguez.

At trial, the district court submitted aggravated assault to the jury. Fernandez requested, but the court denied, submission of deadly conduct as a lesser included offense. The jury convicted Fernandez of aggravated assault.

*Discussion*

In his first point of error, Fernandez argues that the trial court erred in denying him a separate charge on deadly conduct.[1] According to Fernandez, the trial court's failure to submit deadly conduct as a separate count prevented the jury from considering a conviction for a lesser offense. Fernandez argues that the failure to submit a deadly conduct charge caused him "some harm," and the case should be reversed and remanded for a new trial. The State responds that Fernandez has not preserved error on this point because he objected to the trial court's failure to submit deadly conduct as a lesser included offense to aggravated assault, not to the omission of deadly conduct as a second separate count. In the alternative, the State argues that the trial court properly refused to submit the deadly conduct count because the State's failure to submit the count amounted to an election by the State of one count in a two-count indictment.

Fernandez emphasizes that his argument is not that he requested and was denied a charge on the lesser included offense of deadly conduct. Rather, his argument is that he requested and was denied a charge on the offense of deadly conduct, a separate count, as charged in the indictment. According to Fernandez, the fact that deadly conduct "just happens to be a lesser

_____

[1] Fernandez does not appeal the court's refusal to submit deadly conduct as a lesser included offense of aggravated assault. Fernandez complains only of the court's failure to submit deadly conduct as a separate count, as set out in the indictment.

included offense of aggravated assault" has no effect on his argument. Objecting to the jury charge that omitted deadly conduct, Fernandez submitted his own proposed charge, which included questions on both aggravated assault and deadly conduct. However, Fernandez's proposed charge would have allowed the jury to answer the question on deadly conduct only if it found him not guilty of aggravated assault.

Conviction of a lesser included offense is an alternative to conviction of the charged offense, and a defendant can only be separately convicted of a lesser included offense if he is not convicted of the charged offense. *See Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007) (explaining that, to be entitled to a charge on a lesser included offense, the evidence must establish the lesser included offense as "a valid, rational *alternative* to the charged offense") (emphasis added). Thus, when a lesser included offense is properly submitted, the jury is instructed that it should only proceed to consider the lesser offense if it first finds the defendant not guilty of the greater offense. Whether couched in terms of an alternative count or in terms of a lesser included offense, the effect is the same: if a defendant is convicted of the greater offense, the conviction necessarily includes the lesser included offense; if the defendant is not convicted of the greater offense, the jury can consider whether, in the alternative, to convict the defendant of the lesser included offense. *See Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993) (explaining that the lesser offense must be included within the proof necessary to establish the offense charged); *Stephens v. State*, 806 S.W.2d 812, 815 (Tex. Crim. App. 1990) ("As is invariably true of greater and lesser included offenses, the lesser offense . . . requires no proof beyond that of the greater."). In other words, a defendant is not convicted separately on two counts when one of

those counts is a lesser included offense of the other. *See Hall*, 225 S.W.3d at 536; *Rousseau*, 855 S.W.2d at 672-73. The two counts are not considered separately. The lesser included offense is only considered if the defendant is not convicted of the greater offense. *See id.*

Here, had the jury been instructed on deadly conduct as a lesser included offense of aggravated assault, the language of the instruction would have been identical to the instruction set out by Fernandez in his proposed charge, which Fernandez claims is a proposal to instruct the jury on deadly conduct as an alternative count. Further, the alleged harm presented by Fernandez as a result of the court's refusal to submit deadly conduct as an alternative count is identical to the potential harm caused by the court's erroneous refusal to submit a lesser included offense. As Fernandez explains:

> Given Appellant's youth, his lack of intent to actually hurt or kill someone, his statement that he fired the gun at the immediate insistence of one of the accomplices, and that his uncharged accomplices were the driver of the Lincoln and the owner of the gun, the jury might have elected to find Appellant guilty of the lesser included offense of deadly conduct, had they had the opportunity, and opportunity to which Appellant was entitled.

In his explanation, Fernandez not only invokes the argument relating to harm caused by failing to submit a lesser included offense but expressly refers to the jury's consideration of "the lesser included offense of deadly conduct" rather than to deadly conduct as a separate or alternative offense.

The trial court overruled Fernandez's request for submission of the lesser included offense of deadly conduct. Fernandez expressly states that he does not appeal this ruling. Although he now argues that the trial court erred by failing to submit deadly conduct to the jury as a separate

count, he is—in effect—making the argument for inclusion of the lesser included offense under a different label. As we have explained, submitting a lesser included offense as an alternative count is identical in effect to submitting the same offense as a lesser included offense, as a defendant is only convicted of a lesser included offense as an alternative to conviction of the greater charged offense. Consequently, we hold that when, as here, an alternative count is a lesser included offense of a submitted offense, it is properly submitted only as a lesser included offense, not as a separate offense. Because deadly conduct is a lesser included offense of aggravated assault, it was properly submitted only as a lesser included offense, not as an alternative offense. Even if Fernandez had appealed the trial court's refusal to submit deadly conduct as a lesser included offense, we agree with the trial court's assessment that in cases where, as here, "the uncontroverted evidence is that a person suffered serious bodily injury, . . . no reasonable jury could find a defendant guilty of deadly conduct." We overrule Fernandez's first point of error.

In his second point of error, Fernandez argues that the trial court erred in admitting exhibits with the word "Killer" on them.[2] According to Fernandez, admission of these exhibits was more prejudicial than probative, as the exhibits were never tied directly to Fernandez, and resulted in unfair prejudice to Fernandez. The State responds that Fernandez failed to preserve error on this point because: (1) Fernandez's objection at trial does not coincide with his argument on appeal, (2) the same facts were shown by other evidence to which Fernandez did not object, and

---

[2] The exhibits at issue are various photographs of a box of ammunition. The box of ammunition in the photographs has the word "Killer" written on it.

(3) Fernandez received all requested relief on his objection. In the alternative, the State argues that the trial court did not abuse its discretion in admitting these exhibits into evidence.

When the State attempted to admit the exhibits in question, the bench conference proceeded as follows:

DEFENSE: Judge, on these photographs there's something written on there. I was wondering if that was on there when it was retrieved.

STATE: Yes, it was. I can also prove that up with the other—officer who retrieved it actually.

DEFENSE: Okay. What I'd like to do is either ask that the—those photographs with that "Killer" written on there not be—not be admitted until the officers prove that up because it's prejudicial and really serves no purpose. That's just to link those cartridges to the weapon that was fired–that was fired at that vehicle. But I don't know when that was on there. We haven't had any testimony about that yet.

COURT: Does the State care?

STATE: Well, I mean, it just means that—it's going to be a little out of order, I guess, but—well, we'll—we'll bring the other detective that did seize the evidence. But it was on there.

DEFENSE: Well, here's the thing, Your Honor. We're not—we're not going to object to the other photos coming in and we're not contesting that—that the cartridges that were recovered and tested are the same cartridges that came out of the gun that was fired that night that went into that—the bullet that went into the vehicle. And so my—my only objection is that I don't see what purpose it serves to enter in those two photographs which have the box that has "Killer" written on it. We don't know who wrote that. And the jury is going to have an adverse reaction to that scrawled on there. That's my point. We're not—we're not contesting the validity of what the State is trying to get out of these photographs which is that they come from the same revolver that was used in the shooting.

7

STATE: So I guess when I introduce the actual box through the detective that found it where the gun was found, can I then—are you okay with me showing those photographs then?

DEFENSE: Well, if that officer says that that's the way it was when he got it, yeah.

COURT: Well, if the State is positive that this is the exact way the box was at the time the officer found it, I think we can overrule the objection and admit it after the Court finds—well, the relevance outweighs any unfair prejudicial value. It may be of some relevance if your guy's carrying a box of stuff like that.

DEFENSE: Well, we don't know that at this point. That's my objection.

COURT: Well, now that the State says they're going to prove it up and link it all up later, just in the interest of being expeditious, we'll overrule the objection.

DEFENSE: Then I would just ask to have a running objection on that.

COURT: Okay. We'll certainly give defense that. The State's going to offer to link this all up through the next witness?

STATE: Yes, we are.

COURT: Well, based on that—that assurance, the Court will overrule the defense objection and admit 25 through 30 and note the exception and give the defense their running objection to any reference to this.

DEFENSE: Thank you.

Defense counsel stated both that he had no objection to the admission of photographs of the cartridges if they were properly introduced and that any admission of photographs of the box with "Killer" written on it would be unfairly prejudicial to Fernandez. However, the only objection he actually made was to the admission of photographs of the box without the accompanying testimony from the officer that the word "Killer" "was on there when [the box] was retrieved."

8

When asked whether showing the photographs would be acceptable if the State "introduce[d] the actual box through the detective that found it where the gun was found," defense counsel replied: "Well, if that officer says that that's the way it was when he got it, yeah." Referring to the court's statement about whether "the State is positive that this is the exact way the box was at the time the officer found it," defense counsel added: "Well, we don't know that at this point. That's my objection." Thus, it appears that defense counsel's only objection to the admission of the photographs was that the State had not yet established whether the word "Killer" was on the box when the box was found by the police. Defense counsel further indicated that he would have no objection if the State introduced the photographs through the officer who actually found the box if the officer testified that the box was found just as it appears in the photograph.

Following the bench conference, the State presented its witness, Deputy Hughes. Through Deputy Hughes, the State introduced three of the photographs in question, Exhibits 25, 26, and 30. Through the testimony of Deputy Hughes, the State did not establish that the word "Killer" was written on the box at the time it was found. However, the State next called Sergeant Teague, who testified that Exhibits 31 and 38, which are also photographs of the box with the word "Killer" on it, accurately depict what he observed the evening when he found the box. Thus, the State put on evidence that the word "Killer" was on the box when found by the police. To the extent that Fernandez raises other objections to the admission of these exhibits on appeal, including that the photographs were unduly prejudicial or that the State failed to establish a link between Fernandez and the box, those objections were not raised at trial and are, therefore, waived. *See* Tex. R. App. P. 33.1.

Having found that Fernandez received all requested relief on his objection to the admission of these exhibits and that any other objections to the admission of these exhibits were waived, we overrule Fernandez's second point of error.

The points of error are overruled, and the judgment of conviction is affirmed.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed:   June 25, 2008

Do Not Publish

10