IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00227-CR

 

Joe Sidney Williams,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 



From the 54th District Court

McLennan County, Texas

Trial Court No. 2009-110-C2

 



ABATEMENT ORDER










 

            Joe Sidney Williams was convicted of
possession of a controlled substance, enhanced.  Tex. Health & Safety Code Ann. § 481.115 (Vernon Supp. 2009).  He was sentenced to ten years in prison.  Trial counsel for Williams
timely filed a notice of appeal.  Trial counsel was allowed to withdraw from
representation and new counsel was appointed for the appeal.

          Counsel on appeal has filed a brief in
this case.  However, Williams has now filed a “Petition for Time to File a
Pro/Se Appellant Brief.”  In the petition, Williams recounts that he has filed
with the trial court a motion to fire his appellate counsel.  From the
petition, it also appears to the Court that Williams wants to represent himself
on appeal but also wants a lawyer or paralegal to assist him in preparing his
pro se brief.  Accordingly, this appeal is abated to the trial court to hold a
hearing within 30 days from the date of this order to consider and
determine in writing and on the record:  1) whether Williams is indigent and if
so, whether to retain the current appointed counsel or appoint new counsel for
Williams; 2) whether Williams wishes to waive his right to counsel; 3) whether
Williams may represent himself on appeal, if he so wishes; and 4) whether to
appoint “stand by” counsel for Williams.  If Williams wishes to waive his right
to counsel and represent himself on appeal, the waiver should be made knowingly
and intelligently and he should be warned of the dangers and disadvantages
accompanying such waiver.  Faretta v. California, 422 U.S. 806, 835, 95 S. Ct. 2525, 2541, 45 L. Ed. 2d 562 (1975); Hatten v. State, 71 S.W.3d 332,
333 (Tex. Crim. App. 2002).  A waiver of the right to counsel must be in
writing and must substantially comply with article 1.051(g) of the Code of
Criminal Procedure.  See Tex.
Code Crim. Proc. Ann. art. 1.051(g) (Vernon Supp. 2009).  

            The Clerk of this Court is ordered to
forward a copy of the “Petition for Time to File a Pro/Se Appellant Brief” to
the trial court for informational purposes only with a copy of this Order.

            Supplemental Clerk’s and Reporter’s
Records containing the trial court’s written and oral findings and rulings are
ordered to be filed within 45 days from the date of this order.

                                                                   
PER CURIAM

 

Before
Chief Justice Gray,

         
  Justice Reyna, and

            Justice
Davis

Appeal
abated

Order
issued and filed November 25, 2009

Do
not publish






 We will affirm. 
THE EVIDENCE
CURTIS FRANKS
          Curtis Franks, an officer at Texas Department of Criminal Justice, Ferguson Unit,
Midway, Texas, testified that on February 8, 1993, while he was monitoring cell block P, he
observed Inmate Damion Hunt jump from row two of P Block down to row one. Immediately
behind Hunt, Franks saw Inmate Horton running after Hunt. Franks broke up the chase, took
Inmate Horton to the Segregation Office, and reported the incident to his supervisor. Franks
noticed a large cut on Inmate Hunt's neck. Shortly afterwards, Inmate James Rhodes approached
Franks giving him a legal pad binder with some razor blades attached by string. Franks testified
that this type of instrument could be used to cut someone and it was a prohibited weapon since it
presented a hazard to the inmates and officers. On cross-examination, Franks admitted that either
inmate could have possessed the razor blade. 
ANTHONY CRAIGER 
          Anthony Craiger, a corrections officer at the Ferguson Unit, testified that on February 8,
1993, he was "racking" row two. As he opened the row-two cell doors to release the prisoners
from their cells, he observed Inmate Horton leave his cell and attack Inmate Hunt. Inmate Horton
hit Hunt on the head with "something that appeared to be a lock." Then, Horton swiped at Hunt
in a "cutting motion." Craiger testified that the razor blade embedded in the binding of a legal pad
appeared to be the object that Horton used to cut Hunt although at the time of the assault he only
"vaguely" saw the object. He also testified that generally inmates are allowed to have writing
tablets and razor blades, but the inmates are not allowed to have them in that configuration. Thus,
he opined that the razor blade attached to a legal pad was manifestly designed, made, or adapted
for the purpose of cutting someone.
A. P. MERILLAT
          A. P. Merillat, an investigator with the Huntsville Special Prosecutor's Office, testified that
based on his training and experience, he believed that the razor blade attached to the binding of
a legal pad was capable of causing serious bodily injury. He explained that such a weapon could
cause disfigurement leaving large scars especially if a prisoner used the weapon to slash a face or
throat. The razor blade also "could put an eye out." He further testified that if the razor blade
were used to slash wrists, it could result in death. When asked if the razor blade was manifestly
designed, made, or adapted for some other purpose than it was originally intended, Merillat agreed
explaining that the razor blade was designed to hurt someone and it could inflict serious bodily
injury. Additionally, the slashing manner in which the instrument was used was capable of
causing serious bodily injury or death. On cross-examination, he acknowledged that no evidence
existed indicating that Horton had cut Hunt's wrist or attempted to slash his eyes.
AUGUSTIN CASTILLA
          Augustin Castilla, a prisoner, testified that on February 8, 1993, he shared a cell with
Horton at the Ferguson Unit. He testified that he had heard Hunt threatening to make sexual
advances toward Horton and had observed an earlier fight between the two. On February 8, 1993,
Castilla was in the day room, located below row two. He watched the fight between Horton and
Hunt noting that they were hitting each other and that he did not see any weapons. 
CYRON HICKS
          Cyron Hicks, also a prisoner, testified that while he was imprisoned at Coelfield Unit,
Hunt had attempted to make sexual advances toward him, but when he refused, Hunt cut his hand
with a piece of glass leaving scars.
ROBERT EDMINSTON
          Robert Edminston, supervisor of investigators for Inmate Legal Services, testified that by
"touch compression," the razor blade retracted into the legal pad base, and the blade was not very
thick. Thus, it "would be extremely unusual or remote to be able to hurt someone very seriously
in my opinion." On cross-examination, Edminston admitted that the razor blade was not in its
original condition and that it was adapted for some purpose, but "the potentiality of the capability
of this instrument to inflict serious bodily injury or death is not nonexistent or remote." 
          Horton argues that the State did not present any evidence that he actually used or possessed
the razor blade. He also contends that the State did not prove that the razor blade could inflict
serious bodily harm. Under section 46.10, "a person commits an offense if, while confined in a
penal institution, he intentionally, knowingly, or recklessly 1) carries on or about his person a
deadly weapon; or 2) possesses or conceals a deadly weapon in the penal institution." Tex. Penal
Code Ann. § 46.10. To be deadly, a weapon must be manifestly designed, made, or adapted for
the purpose of inflicting death or serious bodily injury, or its manner of use or intended use be
capable of causing death or serious bodily injury. Id. § 1.07(a)(17) (Vernon 1994). Evidence that
a weapon is deadly by design is "fully adequate" to support a deadly weapon finding; thus, the
State is not required to prove the manner of use or intended use if it proves deadly design. 
Thomas v. State, 821 S.W.2d 616, 618 (Tex. Crim. App. 1991); see also Lisai v. State, 875
S.W.2d 35, 38 (Tex. App.—Texarkana 1994, pet. ref'd) (holding that a razor blade with an
attached handle was a deadly weapon when two witnesses testified that it was adapted and designed
to cause serious bodily injury). 
FACTUAL SUFFICIENCY
          Appellant asserts in his first point that the jury's verdict was overwhelmingly against the
weight of the evidence because a razor blade embedded in the binding of a legal pad was not a
deadly weapon; it was incapable of inflicting serious bodily injury or death. The courts of appeals
can review the factual sufficiency of the evidence. Clewis v. State, 922 S.W.2d 126, 129 (Tex.
Crim. App. 1996). A Clewis review allows the courts of appeals to consider all the evidence
setting aside the verdict only if it is "so contrary to the overwhelmingly weight of the evidence as
to be clearly wrong and unjust." Id. (citing Stone v. State, 823 S.W.2d 375, 381 (Tex.
App.—Austin 1992, pet. ref'd, untimely filed)). 
          The jury is the exclusive judge of the credibility of the witnesses and of the weight to be
given to their testimony. Tex. Code Crim. Proc. Ann. art. 38.04 (Vernon 1979); Chamber v.
State, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991). The jury "can choose to believe all, some,
or none of the testimony presented by the parties." Chambers, 805 S.W.2d at 461. In light of
that, we will consider all the evidence and only set aside the verdict if it is so contrary to the
overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis, 922 S.W. 2d at
129.
          After hearing all the evidence, the jury found Horton guilty of possession of a deadly
weapon in a penal institution. The testimony concerning whether Horton actually possessed the
razor blade was conflicting. Officer Craiger testified that he saw Horton swipe at Hunt in a
cutting motion, and he later identified the instrument in Horton's hand as the razor blade.


 In
support of Craiger's observations, Officer Franks testified that after breaking up the chase between
Hunt and Horton, he noticed a cut on Hunt's neck. Augustin Castillo, who was not on the same
floor, testified that he saw no weapons. The jury listened to this conflicting testimony, but it
chose to disregard Castillo's testimony and to believe Officer Craiger and Officer Franks. 
Consequently, the jury rejected Horton's theory that he did not possess the razor blade.
          As to the deadly weapon finding, each side presented its own expert. The State's expert,
Merillat, testified that he believed the razor blade was capable of inflicting serious injury or death
because of the disfigurement it could cause. He also testified that not only was the instrument
manifestly designed, made, and adapted for the purpose of inflicting serious bodily injury or death,
but the manner of its use was also capable of causing serious bodily injury or death. Horton's
expert, Edminston, on the other hand, testified that because the blade retracted, he believed that
the blade could not cause serious bodily harm or death. Here again, the jury rejected Horton's
expert, Edminston, and chose to believe Merillat.
          Having examined all the evidence, we cannot conclude that the jury's verdict is so contrary
to the overwhelming weight of the evidence as to be clearly wrong and unjust. Clewis, 922
S.W.2d at 129; Stone, 823 S.W.2d at 381. Thus, we overrule point one.
LESSER-INCLUDED OFFENSE
          Horton's second point complains that the trial court erred by refusing the defense's charge
on an unlawful use of a criminal instrument. See Tex. Penal Code Ann. § 16.01 (Vernon 1994). 
Horton contends that unlawful use of a criminal instrument is a lesser-included offense of
possession of a deadly weapon in a penal institution. He argues that he tendered a charge
containing an instruction on the lesser-included offense of unlawful use of a criminal instrument,
and the trial court wrongfully rejected his requested charge. 
          A trial court must instruct the jury on a lesser-included offense if it meets the two-prong
test under Rousseau v. State, 855 S.W.2d 666, 672-73 (Tex. Crim. App.), cert denied, ---U.S.---,
114 S.Ct. 313, 126 L.Ed.2d 260 (1993). Under prong one, the lesser-included offense must be
included within the proof necessary to establish the offense charged. Id. at 673. Prong two
requires a showing that some evidence in the record "would permit a jury rationally to find that
if the defendant is guilty, he is only guilty of the lesser offense." Id. (clarifying the test of
Royster v. State, 622 S.W.2d 422, 446 (Tex. Crim. App. 1981). The court will determine
whether an offense is a lesser-included offense of the charged offense on a case-by-case basis. 
Bartholomew v. State 871 S.W.2d 210, 212 (Tex. Crim. App. 1994); Livingston v. State, 739
S.W.2d 311, 336 (Tex. Crim. App. 1987), cert denied, 487 U.S. 1210, 108 S.Ct. 2858, 101
L.Ed.2d 895 (1988); Broussard v. State 642 S.W.2d 171, 173 (Tex. Crim. App. 1982); Day v.
State, 532 S.W.2d 302, 315-16 (Tex. Crim. App. 1976) (op. on reh'g).
          According to the Code of Criminal Procedure, an offense is a lesser-included offense of
the greater offense if 1) it is established by the same or less than all facts required to establish the
greater offense; 2) it differs from the greater offense only in the respect that proof of a less serious
injury or risk of injury is sufficient to establish it; 3) it differs from the greater offense only in the
respect that proof of a less-culpable mental state is sufficient to establish it; or 4) it consists of an
attempt to commit the greater offense or an otherwise included offense. Tex. Code Crim. Proc.
Ann. art. 37.09 (Vernon 1981). The offense of possessing a deadly weapon in a penal institution
requires proof that 1) the defendant intentionally, knowingly, or recklessly 2) carries, possesses,
or conceals a deadly weapon 3) in a penal institution. Tex. Penal Code Ann. § 46.10. On the
other hand, a defendant can only be convicted of unlawful use of a criminal instrument if the state
establishes that 1) the defendant possessed a criminal instrument 2) with the intent to use it in the
commission of an offense. Id. § 16.10(a)(1) (Vernon 1994). 
          Horton argues that unlawful use of a criminal instrument is a lesser-included offense of
possession of a deadly weapon in prison. We disagree. The offense of unlawful use of a criminal
instrument requires a higher mental state than possession of a deadly weapon in a penal institution. 
The State must prove intent to use with the former while the latter only requires intentional,
knowing, or reckless possession. See id. §§ 16.10, 46.10. Although the State did attempt to
prove the razor blade was a deadly weapon by introducing evidence of the manner of use, proof
of use alone does not create a lesser-included offense. A lesser-included offense must fit one of
the four categories of article 37.09 of the Code of Criminal Procedure. See Tex. Code Crim.
Proc. Ann. art. 37.09. Because unlawful use of a criminal instrument does not meet any of the
categories of article 37.09, we overrule point two. 
CONCLUSION
          Having found that the evidence is factually sufficient and that the court correctly refused
Horton's requested charge on unlawful use of a criminal instrument, we affirm the judgment.


                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Davis,
          Justice Cummings, and
          Justice Vance
Affirmed 
Opinion delivered and filed October 2, 1996
Do not publish