

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0265-09

**VICKIE LASHUN TOLBERT, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIFTH COURT OF APPEALS
### DALLAS COUNTY

**HOLCOMB, J.,** *filed a dissenting opinion, in which* **JOHNSON, J.,** *joined.*

### O P I N I O N

I join Judge Johnson's dissent and wish to add the following points.

*1. The majority opinion conflicts with our recent decision.*

I believe that the main problem with the majority's opinion is its view of the lesser-included-

offense instructions as a defensive issue. Although the majority repeatedly cites Judge Cochran's

concurring opinion in our recent decision in *Grey v. State*, 298 S.W.3d 644 (Tex. Crim. App. 2009),[1]

---

[1] As I discuss in Section 4, *infra*, the majority's reliance even on that concurrence is misplaced because the reasoning in that opinion is not applicable to the present case.

it fails to realize that its view of the lesser-included-offense instructions as a defensive issue is almost the opposite of the position taken by the majority in that same case. In fact, it is fair to say that we virtually moved heavens and earth in *Grey* to convince the readers of the State's right to obtain the lesser-included-offense instructions from the trial court. So I am befuddled as to how we can now turn around and say that those same instructions are a defensive issue.

In *Grey*, appellant Steven Grey was charged with aggravated assault by causing bodily injury with a deadly weapon, to wit, Grey's hand used to strangle the victim. The jury charge, prepared by the prosecutor's office, contained instructions on both the indicted offense and the lesser-included offense of simple assault by causing bodily injury. The defense counsel objected to the lesser-included-offense instruction, but the objection was overruled. The jury found Grey guilty of the lesser-included offense of simple assault. On appeal, Grey claimed that the submission of the lesser-included offense was error. The court of appeals agreed and reversed the conviction. *Grey v. State*, 269 S.W.3d 785 (Tex. App.— Austin 2008). We granted the State's petition for discretionary review, and overruled an old precedent,[2] *Grey*, 298 S.W.3d at 645, in order to make it easier for the State to obtain the lesser-included-offense instructions from the trial court.[3]

---

[2] *Arevalo v. State*, 943 S.W.2d 887 (Tex. Crim. App. 1997).

[3] As we noted in *Grey*, the *Royster-Rousseau* (*Royster v. State*, 622 S.W.2d 442 (Tex. Crim. App. 1981) (plurality op.); *Rousseau v. State*, 855 S.W.2d 666 (Tex. Crim. App. 1993)) line of cases had established a two-pronged test for determining when a trial judge was required to submit to the jury a lesser-included offense requested by the defendant. 298 S.W.3d at 645. Later, in *Arevalo*, we held that the second prong of that test – which required that some evidence must exist in the record that would permit the jury to find that if the defendant is guilty, he is guilty only of the lesser-included offense – was equally applicable to the submission of the lesser-included offenses requested by the State. *Id.* Thus, by overruling *Arevalo* and holding that the State is not bound by the second prong of the *Royster-Rousseau* test, *id.*, in *Grey* we removed the burden *Arevalo* had placed on the State in obtaining the lesser-included-offense instructions

(continued...)

Initially, we justified our decision to overrule *Arevalo* by explaining that it was the right thing to do for both the State and the defendant. As we stated:

> One obvious flaw in the rule laid down by *Arevalo* and its progeny, one that produces inconsistent and unjust results in every single case in which the rule is applied, is the remedy. When a lesser-included offense is submitted in violation of *Arevalo*, and the defendant is convicted of that offense, the remedy this Court has imposed is a remand for a new trial on the very same lesser-included offense that the defendant has just claimed should never have been submitted. Such a result is "illogical," but we fashioned this remedy because alternative remedies seemed unavailable or worse. Because a conviction on the lesser offense operates as an acquittal of the greater offense, retrial on the greater offense is not possible. But an outright acquittal of the criminal charge would be absurd where the evidence was in fact legally sufficient to support a conviction for the lesser-included offense.

*Id.* at 646-47 (citations omitted). But our concern moved quickly to the logic of making it easier for the State to obtain a lesser-included-offense instruction from the trial court. As we explained:

> The Court in *Arevalo* . . . held that [the] rationale [for the second prong of the *Royster-Rousseau* test] "is as applicable to the State's request for a lesser-included offense as it is to a defendant's request." Why? Because a lesser-included-offense instruction "must not constitute an invitation to the jury to reach an irrational verdict."
>
> But the Court [in *Arevalo*] did not ask or answer the next obvious question: How does a lesser-included-offense instruction invite a jury to reach an irrational verdict? If the lesser offense is viewed in isolation, a jury's verdict would be rational so long as the lesser offense is included in the charging instrument and supported by legally sufficient evidence. The [second] prong of the *Royster-Rousseau* test requires, however, that we view the rationality of the lesser offense, not in isolation, but in comparison to the offense described in the charging instrument. But why should we make that comparison? The answer must be that the State is entitled to pursue the charged offense and, therefore, is entitled to receive a response from the jury on whether the defendant is guilty of the charged offense. Is the defendant similarly entitled to a response from the jury on the charged offense? The answer to that question is clearly no. It is the State, not the defendant, that chooses what offense is to be charged. In fact, the State can abandon an element of the charged offense without prior notice and proceed to prosecute a lesser-included offense. If

---

[3](...continued)
from the trial court.

> the State can abandon the charged offense in favor of a lesser-included offense, there is no logical reason why the State could not abandon its unqualified pursuit of the charged offense in favor of a qualified pursuit that includes the prosecution of a lesser-included offense in the alternative.

*Id.* at 649-50 (citations omitted). Thus, we emphasized that it was the State, more than the defendant, who was entitled to the benefit of having the lesser-included-offense instructions, in light of its burden to prove that the defendant, even if he was not guilty of the charged offense, was at least guilty of the lesser offense.

We went on to emphasize that the society's interests would also be best served by making it easier for the State to obtain those instructions from the trial court. As we explained,

> [A]t the time of trial, the State might . . . legitimately perceive[] the possibility . . . that an appellate court would decide that the evidence was legally insufficient to prove the [element necessary for the jury to convict on the greater offense].
>
> . . . .
>
> The cautious approach for the prosecutor to take would be -- or at least should be -- to request the lesser-included offense. Allowing submission of lesser offenses when requested by the prosecutor would serve at least two important interests. First, society has an interest in convicting and punishing people who are guilty of crimes. When, in the prosecutor's judgment, submission of the lesser-included offense will enhance the prospects of securing an appropriate criminal conviction for a defendant who is in fact guilty, society's interests are best served by allowing the submission. Second, the prosecutor has "the primary duty . . . not to convict, but to see that justice is done." Even if the prosecutor believes in a given case that he will secure a conviction on the charged offense if the only alternative is acquittal, he might also believe that the jury should be given the option to decide whether a conviction on the lesser offense is more appropriate.

*Id.* at 650-51 (citations omitted).

We emphasized our view favoring the State's right to obtain the lesser-included-offense instructions even in our conclusion, stating that we had to overrule *Arevalo* because the common-law rule established in that case placed "undue burdens on the prosecutor." *Id.* at 651.

In short, in *Grey* we recognized the State's right to the lesser-included-offense instructions as being superior to the defendant's right to have such instructions insofar as we exempted the State from the second prong of the *Royster-Rousseau* test, which remains applicable to the submission of the lesser-included-offense instructions requested by the defendant. As such, I do not see how the majority in the present case can now call those instructions a defensive issue. On the contrary, I believe that appellant in the present case is entitled to relief for the same reasons we granted relief to the State in *Grey*.

2. *Applicability of* Grey *to the present case.*

The majority admits that it was the State who had requested the lesser-included-offense instructions in the present case. This fact in itself conflicts with the majority's characterization of those instructions as a "defensive" issue because the State was obviously not trying to help the defense in this case.

In fact, the record shows that the prosecutor in the present case did much more than just ask for the lesser-included-offense instructions. Although the trial in this case predates our recent decision in *Grey*, even a cursory examination of the record shows that the prosecutor did exactly what we suggested the prosecutor should do when there is a possibility that the available evidence might not be sufficient to convince the jury to convict the defendant on the charged offense. The record in the present case clearly shows such a possibility. In fact, there was no direct evidence to prove that appellant had actually killed the victim during the course of robbing him. There were no eyewitnesses to either crime, nor any video recording to show what actually happened. There were not even any witness accounts of appellant's telling them, for example, that she had killed the victim because he had caught her stealing the items in question, or that she had wanted to get her hands on

those items but he stood in her way, etc. The witnesses at trial stated only that she had told them that he had said hurtful things, that the more she thought about what he had said the more it hurt, and that it was in this state of hurting that she killed him, and that even as she was stabbing him she kept telling him, "I love you, I love you, I love you." This was the evidence that the State presented, and the evidence that it emphasized in both its closing arguments. Thus, there is no way to determine on this evidence whether the murder was committed before the robbery (in which case it was not capital murder), or during the course of the robbery (in which case it was capital murder).

On the state of such evidence, it is not surprising that the prosecutor adopted the "cautious approach" that we later encouraged in *Grey.* 298 S.W.3d at 651. The record clearly shows – from the indictment right up to the closing arguments – that the prosecutor was trying to ensure that the jury would find appellant guilty at least of the lesser-included offense of murder.

- *The Indictment*: In the second paragraph of the indictment, the State alleges for enhancement that appellant had been formerly convicted of the felony offense of robbery. Enhancement would not be relevant if the State were anticipating a conviction for capital murder, for which the automatic punishment in this case would be a life sentence, because the State did not ask for the death penalty.[4] It would be relevant only if the State were uncertain about the strength of its case and was therefore preparing for a possible conviction for the lesser-included offense of murder, in which case a former conviction would enhance the minimum punishment of only five years for a first-degree felony to 15 years for a repeat and habitual

---

[4]*See* TEX. PEN. CODE §§ 19.03(b) & 12.31(a).

felony offender.[5]

- *The Lesser-Included-Offense Instructions*:   The majority in the present case notes that "the parties had discussed several lesser-included offense scenarios such as murder and robbery during voir dire." Maj. op. at 2.  Contrary to the majority's suggestion, the record shows that the State spent a great deal of time discussing the lesser-included offense involved in the present case: murder.  Indeed, the State spent far more time discussing this issue with the jurors than the defense did.

- *The Evidence at Trial*:   The majority states that the State presented evidence that could support either a finding that appellant had committed the murder during the course of robbing the victim (capital murder), or that she had decided to rob the victim only after killing him (murder).  *Id.* at 1.  But, while there was strong evidence to show that appellant committed the murder and the theft, the evidence in the record purporting to show the critical link necessary to elevate the offense from murder to capital murder – that the murder was in fact committed during the course of a robbery – was, at best, weak and only inferential.

- *Closing Arguments*:   The majority fails to mention that the State focused on the lesser-included offense in both its final arguments to the jury, even after the trial judge had already overruled its request for instructions on that offense and had not included those instructions in the jury charge. The State did so by emphasizing appellant's own statements to the witnesses who later testified at trial, which proved appellant guilty only of murder, not capital murder.  In fact, the State did not discuss any evidence, or even draw any inferences from the evidence presented, to try to show that the murder was committed during the course

---

[5]*See* TEX. PEN. CODE §§ 19.02(c), 12.32(a), & 12.42(c)(1).

of a robbery. Thus, the State's arguments, in the absence of the lesser-included-offense instructions in the jury charge, relayed a remarkably distorted message to the jury: that if they were to find appellant guilty of the lesser-included offense of murder, they should convict her for the greater offense of capital murder, even though the State had done virtually nothing at trial to try to prove the critical element necessary to elevate the offense from murder to capital murder, *i.e.*, that the murder had been committed during the course of a robbery.

Thus, the record clearly shows the prosecutor's intense focus on the lesser-included offense. There was nothing wrong with that inasmuch as she was doing exactly what we, in *Grey*, recently suggested that a prosecutor should do when the evidence supporting a conviction for the charged offense is weak: take the "cautious approach" and try to prove the lesser offense, including asking the trial court for the lesser-included-offense instructions, in order to ensure that a guilty defendant would not go completely free simply because the evidence was insufficient to convict her on the charged offense. *Grey*, 298 S.W.3d at 651. But the prosecutor created a problem when she continued that strategy, discussing the lesser offense even after the trial judge denied her request for the lesser-included-offense instruction and did not include that instruction in the jury charge. Her persistence in the strategy confused the jurors, resulting in the note that they sent to the trial court, asking about the lesser-included offense that the prosecutor, not the defense, had practically ingrained in their brain from the very beginning of the trial.[6] The trial court might have been able

---

[6]The jury note stated: "Should we consider lesser included charges if we [text scratched out] believe the robbery was an afterthought[?] Does it make a difference if the robbery was an afterthought [text scratched out] to a crime of passion[?]" It is important to note here that the trial court, interpreting this jury note as a request for a lesser-included-offense instruction, could have charged the jury on the lesser offense at this point. *See* TEX. CODE. CRIM. PROC. art. 36.16 ("After the argument begins no further charge shall be given to the jury unless required by . . . the

(continued...)

to, but failed to, provide the jury with the guidance that they asked for to help them convict a defendant that they, judging by their note, seriously considered might have been guilty of murder, but not capital murder.

The trial court's refusal to give the lesser-included-offense instructions requested by the State unduly limited the jury's choices: they could either convict appellant on capital murder, or acquit her. The jury could not acquit appellant because there was enough evidence in the case (in the form of appellant's own statements to other witnesses) to show that she had committed the murder and the theft. So, they went for the only choice they had left for conviction: capital murder. But, in *Grey,* we talked at length about "unjust results" and how "an outright acquittal of the criminal charge would be absurd where the evidence was in fact legally sufficient to support a conviction for the lesser-included offense." *Id.* at 646-47. Is an outright conviction any more just or less absurd where the evidence is in fact legally insufficient to support a conviction for the greater offense?

*3. Law applicable to the case.*

This is an important point that the majority neglects to address. I believe that the question of what law is or is not "applicable to the case" should not be determined in hindsight, based on who won and who lost at trial. The question of whether or not the trial court erred in refusing the State's request for lesser-included-offense instructions should be determined, not on the basis of who is complaining and when, but why? I believe that the trial court erred in the present case because it limited the jury to a choice of two extreme decisions (to convict for capital murder, or acquit), when the evidence at trial warranted something in the middle: a conviction for a lesser-included offense.

---

[6](...continued)
request of the jury.").

By taking away this middle choice, the trial court turned the verdict into a gamble, which guaranteed a windfall to one side to the complete detriment of the other, but no way to be sure who was going to be the big winner and who would be the big loser. The jury in the present case opted to give the benefit to the State, and it was the appellant who suffered the detriment when she was convicted for capital murder in the absence of any real evidence to show that the murder was committed during the course of a robbery. But the jury might just as easily have come out the opposite way. They could have acquitted appellant, and it would have been the State to suffer the detriment of seeing a defendant, who was at least guilty of the lesser-included offense, go scot-free. I believe that verdicts should be reached, not by a gamble, but by clear-cut rules of law that are laid out in the jury charge well before anyone can be sure which party will win. I also believe that our courts are courts of "law and justice," and that such law and justice is not just for the benefit of the State.

*4. The majority misinterprets appellant's claim.*

The majority has misunderstood appellant's argument. It virtually adopts the State's argument (that appellant was "going for broke" and is now complaining only because her strategy did not pay off and she was convicted of capital murder, *see, e.g.,* Maj. op. at 5-6) throughout its opinion. The majority then proceeds to rebuff appellant on the ground that we should "discourage parties from sandbagging or lying behind the log." *See, e.g., id.* at 5 n.6 (citation omitted). But, in so doing, the majority completely misses appellant's real argument before us. As appellant has clearly stated in her own formulation of the "Issue Presented,"

> Under the facts of this case, does the State's failure of proof of the elements alleged in the indictment to prove capital murder result in the lesser-included offense of murder becoming a defensive issue; or did the error occur when the court refused the jury's request for an instruction on the lesser-included murder offense[?]

*See* Appellant's Brief at ii, 2 & 9. As appellant later stated even more clearly:

> Respondent argues that the failure of the State's evidence to initially convince the jury beyond a reasonable doubt that a capital murder was committed, as is evidenced by the jury's request for an instruction on a lesser offense, does not create a defensive issue but is instead the law of the case, and the court therefore erred in not originally charging the jury on murder, *sua sponte,* without regard to a request from the defendant; and that the court erred again in not providing this law to the jury members at their request.

*Id.* at 10.

One had to draw an inference from the evidence presented to think that the murder might have been committed during the course of a robbery, making it capital murder. The indictment, as well as the State's strategy from voir dire to the closing arguments, clearly indicate the State's own uncertainty whether it would be able to convince the jury to convict appellant for capital murder. That was why it was the State, not the defendant, who asked the trial court for the lesser-included-offense instruction, in the first place. The State was obviously not trying to help the defendant by asking for a defensive instruction. But, even after the trial court refused to give those instructions, the State summarized the evidence proving the lesser offense, without even trying to show any link between the murder and the robbery that could have helped persuade the jury that the murder was committed during the course of a robbery. As appellant has correctly argued, the fact that the jury was not convinced that appellant had committed capital murder is shown by the note it sent to the trial court. This note indicated the jury's "belie[f]" that "the robbery was an afterthought," which reduced appellant's offense to what even the jury realized was only a "lesser included charge[]," *see supra* note 6, which in turn indicates that the State had failed to prove a critical element of the charged offense: that the murder was committed during the course of the robbery. And that is appellant's real contention, which the majority fails to address in its opinion.

*5.* Hall *required the trial court to give the lesser-included-offense instructions.*

The majority declines to review the present case in light of our decision in *Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007). *See* maj. op. at 2 n.1. I submit, however, that such a review is indispensable especially to the facts of this case. The majority states that *Hall* sets out a "two-part test for when a defendant is entitled to her requested lesser-included-offense instruction." *Id.* But there is nothing in *Hall* to support the majority's suggestion that *Hall* is applicable only to cases in which the lesser-included-offense instructions were requested by the defendant. As we stated at the very beginning of that opinion, "We granted review to resolve ambiguities and conflicts in our decisions about the method of determining whether the allegation of a greater offense includes a lesser offense." 225 S.W.3d at 525. We continued in this vein throughout that opinion, discussing that method of when and how to determine whether a lesser-included offense was included in the charged offense, without regard to whether such instructions had been requested by the State or the defendant or, for that matter, no one at all.

As we stated, "[t]he evidence adduced at trial should remain an important part of the court's decision whether to charge the jury on lesser-included offenses." *Id.* at 536. We repeated this central idea in the very next line, as we stated that "[t]he second step in the analysis should ask whether there is evidence that supports giving the instruction to the jury." *Id.* It is true that we then went on to state that "[a] defendant is entitled to an instruction on a lesser-included offense where the proof for the offense charged includes the proof necessary to establish the lesser-included offense and there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.* But that is not the same as requiring the defendant to request the lesser-included-offense instructions before she is entitled

to receive them.[7]

The present case is a perfect illustration of the difference between the situation in which a defendant is entitled to a lesser-included-offense instruction and one in which she is required to request such an instruction before she can become entitled to it. *Hall* requires only "some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser-included offense." *Id.* Specifically, "anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge." *Id.* In the present case, it is questionable whether a scintilla of evidence existed to prove a critical element of the charged offense: that the murder was committed during the course of a robbery. The prosecutor's case – from the enhancement paragraph in the indictment, to the discussion of the lesser-included offense in voir dire, to the presentation of evidence from witnesses relating appellant's own account that she had committed the murder only in a heat of passion, to the closing arguments that failed to even mention or otherwise show that the murder was committed during the course of the robbery – was singularly focused on proving the lesser offense. The fact that the jury sent out a note, specifically asking the court for guidance on the lesser offense, even though the jury charge itself did not even mention that offense, showed their inclination to find appellant guilty of that offense rather than the one charged in the indictment. Thus, there was more than "some evidence in the record" to persuade the jury to

---

[7]It would have been a different matter if appellant in the present case had objected to the submission of the lesser-included-offense instructions requested by the State, and the trial court had overruled the State's request because of that objection. In that case, I might agree with the majority that appellant cannot have it both ways: object to the instructions at trial and, if she loses the case, to then appeal on the grounds that the trial court should have granted the State's request, after all. But that is not the case before us. Appellant stated that she had no objection to the jury charge, which did not have the lesser-included-offense instructions; but her not objecting and, in effect, going along with the court's ruling is not the same as actively objecting to the inclusion of the lesser-included-offense instructions in the charge.

"rationally . . . find" that appellant was guilty only of the lesser-included offense. *Id.* It is, therefore, clear that the trial court erred in not giving the lesser-included-offense instruction requested by the State.

The fact that appellant failed to object to the charge is relevant only to the extent that *Almanza*[8] applies, requiring a showing of egregious harm before appellant can be granted relief. But it is clear that appellant in this case did suffer such egregious harm in light of the fact that she was convicted of capital murder, even though the jury itself seemed inclined to believe that she was guilty only of the lesser-included offense of murder.

*6. The trial court's error*

Finally, I believe that we are avoiding an issue which stands out like an elephant in a bathtub; and that is whether appellant's counsel was ineffective for not specifically asking and arguing for a lesser-included-offense instruction. I realize that no point of error was advanced on this issue. However, if we look closely at what occurred, we can see that an argument for ineffective assistance of counsel makes some sense. The State had requested a lesser-included-offense instruction and, based on the evidence presented at trial, appellant's counsel should have joined the request and/or objected to the charge without such an instruction. It would not have hurt counsel's strategy of asserting appellant's complete innocence to have sided with the State on this issue. I believe, therefore, that counsel was ineffective in failing to join the State's request for the lesser-included-offense instruction.

On the other hand, Judge Johnson may be right in suggesting that the failure of appellant's counsel to request a lesser-included-offense instruction might have been reasonable if such a request

---

[8]*Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g).

would have been futile in light of the trial court's response to the State's request on this same issue. *See* Dis. op. at 8 (Johnson, J., dissenting). But, regardless of whether appellant's counsel was ineffective or justified in failing to ask for and/or join the State's request for the lesser-included-offense instruction, my point is that the trial court should still have included that instruction in the charge because the need for such an instruction should have been obvious from what it had heard from the parties during voir dire and seen as evidence presented at trial. As I suggested earlier, *see supra* note 6, even if the trial court had originally failed to recognize the need to include the lesser-included-offense instruction in the jury charge, it should (and, under Article 36.16 of the Code of Criminal Procedure, could) have charged the jury on the lesser-included offense when it received the note from the jury asking specifically about that offense.

* * * * * * * *

The question of the lesser-included-offense instructions in this case is not a "defensive" issue, but rather one of "law applicable to the case." The real issue before this Court is that the trial court erred in not giving the lesser-included-offense instructions requested by the State because the State failed to prove beyond a reasonable doubt a critical element of capital murder: that the murder was committed during the course of the robbery. The record strongly suggests that the State itself was uncertain as to a conviction on the charged offense and did its best to convince the jury to convict appellant on the lesser offense. The State's singular focus on the lesser offense in itself was sufficient to make the question of the lesser-included-offense instructions "law applicable to the case." The fact that the jury happened to err on the side of convicting rather than acquitting appellant should not detract us from these basic facts: the State failed to prove a critical element of the charged offense, the trial court failed to provide the jury with the proper "law applicable to the case" covering

all three verdicts (capital murder, murder, acquittal) possible in the present case, and appellant was convicted of an offense much greater than the one the jury itself seemed inclined to believe she had committed.

For the foregoing reasons, I respectfully dissent.

FILED: MARCH 17, 2010.

PUBLISH.