# NO. 12-13-00383-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *JUAN DURANT,* *APPELLANT* | *§* | *APPEAL FROM THE 349TH* |
| *V.* | *§* | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,* *APPELLEE* | *§* | *HOUSTON COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Juan Durant appeals his conviction for assault on a public servant. In one issue on appeal, Appellant argues that the trial court erred by failing to instruct the jury on the lesser included offense of misdemeanor assault. We affirm.

## BACKGROUND

Appellant was charged by indictment with assault on a public servant, and the indictment included a felony enhancement paragraph. Appellant pleaded "not guilty," and the case proceeded to a jury trial. At the conclusion of the trial, the jury found Appellant guilty of assault on a public servant as charged in the indictment, found the felony enhancement paragraph to be "true," and assessed Appellant's punishment at eight years of imprisonment. This appeal followed.

## JURY INSTRUCTION

In his sole issue on appeal, Appellant argues that the trial court erred by failing to instruct the jury on the lesser included offense of misdemeanor assault. More specifically, he contends that he presented some evidence from which a jury could have found him guilty of misdemeanor assault rather than assault on a public servant.

**Applicable Law**

In determining whether a jury should be instructed on a lesser offense, courts apply the two prong ***Aguilar/Rousseau*** test. ***Hall v. State***, 158 S.W.3d 470, 473 (Tex. Crim. App. 2005); *see also* ***Aguilar v. State***, 682 S.W.2d 556, 558 (Tex. Crim. App. 1985); ***Rousseau v. State***, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993). The first step requires a court to determine whether the lesser offense is actually a lesser included offense of the offense charged as defined by Article 37.09 of the Texas Code of Criminal Procedure. ***Hall***, 158 S.W.3d at 473. Assault on a public servant, as alleged in this case, requires proof of misdemeanor assault and proof of four additional elements:

(1) the person assaulted was a public servant;

(2) the actor knew that the person he assaulted was a public servant;

(3) the person assaulted was discharging official duties at the time of the assault; and

(4) the person assaulted was lawfully discharging official duties.

*See* TEX. PENAL CODE ANN. § 22.01(b)(1) (West Supp. 2014); ***Hall***, 158 S.W.3d at 473. Because the offense of assault on a public servant differs from misdemeanor assault only because it requires proof of additional facts, the first prong of the ***Aguilar/Rousseau*** test is satisfied. ***Hall***, 158 S.W.3d at 473. The State does not disagree. However, a jury charge on a lesser offense is not necessarily warranted simply because a lesser offense is included within the proof of a greater offense. *See **id**.* (citing ***Aguilar***, 682 S.W.2d at 558).

The second prong of the ***Aguilar/Rousseau*** test asks whether the record contains some evidence that would permit a rational jury to find that the defendant is guilty *only* of the lesser included offense. *See **id.*** In other words, there must be some evidence from which a rational jury could acquit Appellant of assault on a public servant while convicting him of the lesser included offense of misdemeanor assault. *See **id.*** In making this decision, a court evaluates the evidence in the context of the entire record, but does not consider whether the evidence is credible, controverted, or in conflict with other evidence. *See **id.*** If there is affirmative evidence in the record that negates one of the four additional elements of assault on a public servant, yet admits the underlying assault, Appellant would be entitled to a lesser included charge. *See **id.*** at 474.

2

According to the court of criminal appeals, "as long as the officer was acting within his capacity as a peace officer, he was acting within the lawful discharge of his official duties." *Id.* (quoting *Guerra v. State*, 771 S.W.2d 453, 461 (Tex. Crim. App. 1988)). The "lawful discharge" of official duties means that the public servant is not criminally or tortiously abusing his office as a public servant by acts of, for example, "official oppression," "violations of the civil rights of a person in custody," or the use of unlawful, unjustified force. *See id.* at 474-75.

Further, the Texas Penal Code provides that a correctional officer or employee is justified in using force against a person in custody "when and to the degree the officer reasonably believes the force is necessary to maintain the security of the correctional facility, the safety or security of other persons in custody or employed by the correctional facility, or his own safety or security." TEX. PENAL CODE ANN. § 9.53 (West 2011).

**The Evidence**

Jamie Dauzat, a former correctional officer for the Texas Department of Criminal Justice (TDCJ), testified that on May 20, 2012, he was working as an officer at the Eastham Unit in Houston County and wearing his TDCJ uniform. That morning, he was working in the chow hall during lunch, supervising other coworkers and the mass movement of the offenders. He stated that offenders were allowed to take only one tray of food and were never allowed to have two trays.

Dauzat testified that he saw Appellant with two trays of food. He approached Appellant and, standing on one side of a three foot rail separating the cafeteria line from the seating area, ordered Appellant to hand him the extra tray. Appellant did not comply. Instead, Dauzat said, Appellant turned, said "f*** you b***h," and turned back around. Dauzat again ordered Appellant to give him the tray. He also told Appellant to hand him the tray or he could leave the chow hall. Appellant turned around and said "get the f*** out of my face b***h." At that point, Dauzat said, he reached for Appellant's tray. Appellant pulled the tray back, dropped the second tray that he had in his left hand, and balled up his fist. Then, Appellant stepped up to the rail, got close to Dauzat's face, and told him to "get out of my f***ing face before I beat your a**." Dauzat testified that he perceived Appellant's words and actions as a threat and was concerned for his safety and the safety of the offenders watching the altercation.

At that point, Dauzat struck Appellant with his open hand on the lower part of Appellant's throat to back him up or push him back. He stated that Appellant stumbled back,

came toward him, and hit him across the side of the face with the edge of the tray. Dauzat grabbed Appellant and, with a coworker's help, restrained him. He suffered pain, bleeding, and a laceration in the corner of his eyebrow, bruises and tenderness underneath his eye, a headache, and a swollen and bruised lip. Dauzat stated that Appellant violated the rules, and was subject to written disciplinary violations for taking two trays, disobeying direct orders, and cursing at him.

Another former correctional officer, Jeffrey Hunter, was in the chow hall at the time and described both men as becoming mad. He heard Appellant threaten Dauzat, saying "I'll beat your a**," and saw him step towards Dauzat aggressively and clench his fist. Then, he saw Dauzat push Appellant at the base of his throat. According to Hunter, Appellant "came around with one of the trays" and struck Dauzat in the head with it. Another correctional officer in the kitchen also saw Appellant strike Dauzat in the head with a tray.

In contrast, Appellant testified that he took two trays even though he knew it was against the rules because he was hungry. However, he said, Dauzat approached him in a different manner than other correctional officers had in the past when he had taken two trays. Appellant characterized Dauzat as aggressive and testified that the first thing Dauzat said was to "give [him] the "f*****g" tray." At that point, he said, Dauzat tried to reach for the tray. Appellant told Dauzat to "chill man" and let him "make it." He denied cursing at Dauzat, but admitted that he held the tray away from him. Appellant also admitted that he was disobeying an order that could result in a disciplinary action. According to Appellant, Dauzat reached for the tray again and told him to give him the "f*****g" tray. Again, Appellant did not comply, but, instead, threw the tray on the floor because he "couldn't take it no more."

Appellant testified that when he threw the tray on the floor, Dauzat became mad, began screaming and cursing at him, calling him a b***h, a h*e, and a m*****f****r, and hit him. He described the blow as a karate chop to the side of his neck. Appellant stated that he feared for his safety and, thus, dropped the tray on the rail and swung at Dauzat. He initially denied stepping backwards from Dauzat's use of force, but later admitted that he "went back." Appellant testified that he and Dauzat began wrestling, and he admitted hitting Dauzat three times, including in the eye. However, he denied hitting Dauzat with the food tray.

## Analysis

In this case, we must decide whether a rational jury could find Appellant guilty of only misdemeanor assault, not assault on a public servant. *See Hall*, 158 S.W.3d at 473-74. The only

4

element of assault on a public servant that Appellant claims to have affirmatively negated is that Dauzat was in the "lawful discharge" of his official duties. Appellant contends that he offered some evidence that Dauzat acted "unlawfully" when he struck Appellant with his hand on the lower part of Appellant's throat to push him back. Therefore, he argues, Dauzat used unlawful, unjustified force without provocation and stepped outside the lawful performance of his official duties. Appellant would have been entitled to a lesser included instruction only if there were some record evidence, from any source, that Dauzat was criminally or tortiously abusing his status as a public servant at the time of the assault. But there is no such evidence.

Appellant violated the rules by taking two food trays and refused to obey a direct order from Dauzat to give him the extra tray. Instead, Appellant cursed at Dauzat, threw one of the trays on the floor, aggressively stepped towards Dauzat, clenched his fist, and verbally threatened him. Because Appellant refused to comply and threatened Dauzat's safety, and, in Dauzat's opinion, that of the other offenders in the chow hall, Dauzat pushed Appellant back with an open hand to the lower part of his neck. At that point, Appellant struck Dauzat in the face with the food tray, inflicting painful injuries. Dauzat's use of force was well within the scope of his lawful duties to maintain the security of the correctional facility, his safety, and the safety of others in the correctional facility. *See* TEX. PENAL CODE ANN. § 9.53.

However, Appellant offered his own testimony that he believed Dauzat acted aggressively towards him and cursed at him. In his brief, he argues that Dauzat did not follow TDCJ's policy of attempting to de-escalate the situation to avoid the need for the use of force. Even if there were evidence that Dauzat violated internal prison policies and procedures, that evidence would not support a valid, rational conclusion that he criminally or tortiously abused his official office or duties at the time of the assault. *See **Hall***, 158 S.W.3d at 476. There is no record evidence that Dauzat unjustifiably hit or pushed an offender who was minding his own business. *See id.* Here, Appellant instigated the confrontation because he refused to obey the legitimate orders of a correctional officer. There is no evidence that would support a rational conclusion that Dauzat was unlawfully discharging his official duties at the time Appellant hit him with the food tray. Based upon an evaluation of the facts in this case after consideration of the entire record, it is clear that the second prong of the ***Aguilar/Rousseau*** test has not been satisfied. Thus, Appellant was not entitled to a lesser included offense instruction. We overrule Appellant's sole issue.

## DISPOSITION

Having overruled Appellant's sole issue on appeal, we *affirm* the judgment of the trial court.

**JAMES T. WORTHEN**
Chief Justice

Opinion delivered October 22, 2014.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

### OCTOBER 22, 2014

### NO. 12-13-00383-CR

**JUAN DURANT,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 349th District Court

of Houston County, Texas (Tr.Ct.No. 12CR-119)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

James T. Worthen, Chief Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*